# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| TARGET CORPORATION<br>1000 Nicollet Mall<br>Minneapolis, MN 55403 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT** |
| SEAMAN CORPORATION<br>c/o Statutory Agent<br>Richard Seaman<br>1000 Venture Blvd.<br>Wooster, OH 44691 | )<br>)<br>)<br>)<br>)<br>) | (Jury Demand Endorsed Hereon) |
| Defendant. | ) | |

COMES NOW Target Corporation ("Target" or "Plaintiff") and as and for its Complaint against Seaman Corporation ("Seaman" or "Defendant") states and alleges as follows:

## PARTIES

1. Target Corporation is a Minnesota Corporation with its principal place of business located at 1000 Nicollet Mall, Minneapolis, MN 55403.

2. Seaman Corporation is an Ohio Corporation with its principal place of business located at 1000 Venture Blvd, Wooster, OH 44691.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this action in that the amount in controversy exceeds the sum or value of Seventy-Five Thousand and No/100 Dollars ($75,000), exclusive of interest and costs, and is between citizens of different States.

4. This Court has personal jurisdiction over Defendant because it is an Ohio Corporation with its principal place of business located in Ohio, and more particularly, within this district.

5. Target is a Minnesota Corporation with is principal place of business in Minnesota, and is thus, diverse from Defendant for purposes of citizenship.

6. Pursuant to 28 U.S.C. § 1391(a), venue is properly established in this judicial district.

## GENERAL ALLEGATIONS

**A.  Target Purchased Roof Membranes From Approved Vendors.**

7. Target owns and operates retail stores under the Target® brand throughout the United States.

8. Target owns the vast majority of the buildings from which it operates its retail stores.

9. Most of Target's buildings are constructed with roofs that have very low slopes, such that they appear to be nearly flat.

10. Over the nearly 60 years of its existence, Target purchased numerous roof membranes and roof membrane systems to, among other things, cover the roofs of its buildings and protect the buildings and their content from the weather.

11. Over the nearly 60 years of its existence, Target purchased such membranes both for application in new construction and to replace membranes that had reached the end of their useful life.

12. To ensure the highest quality products were utilized in the construction of its new stores, and in renovations, maintenance or repairs to its existing stores, Target established

minimum quality standards and performance requirements for certain building materials utilized in the construction, maintenance and repairs of its stores.

13. Among other products, Target evaluated and selected specific approved roof membrane products from a small number of approved membrane suppliers.

14. These approved suppliers bid on particular Target projects through an invite only "bid event." Only Target-approved suppliers were permitted to participate in these "bid events."

15. The bid event established the price Target would pay when it purchased roof membranes from an approved supplier; however, Target purchased roof membranes from its approved suppliers on a store-by-store basis, meaning that Target or its authorized designee would purchase a membrane for a specific store at the time it was needed for that particular store.

16. Target separately contracted with an installation contractor to install the roof membranes it purchased for each particular store.

17. Target-approved roof membrane suppliers sold membranes and related products to Target, but did not install the membranes on the roofs of Target stores.

    **B.    Seaman's Representations, Promises, Guarantees and Warranties Regarding the FiberTite Products.**

18. In the 2000s, Target was expanding and, as a result, contracted to have multiple new stores built each year in states all over the country.

19. Defendant is in the business of manufacturing and selling, among other things, "FiberTite" brand membranes.

20. Seaman was not always a Target-approved supplier for roofing material and Seaman's FiberTite membranes were not always approved roofing membranes on Target stores.

21. Seaman wanted to become an approved roof membrane supplier for Target, wanted its FiberTite membranes to be designated as approved roofing membranes for Target stores, and wanted an invitation to participate in Target's future invitation-only bid events.

22. Representatives of Seaman met with representatives of Target at a building material conference and requested that Target designate Seaman as an approved supplier of roofing material, approve Seaman's FiberTite 36 mil roofing membrane for application on Target stores, allow Seaman to participate in future bid events, and ultimately, purchase FiberTite membranes for roofs on Target's stores.

23. Target representatives informed Seaman's representatives that Seaman could only be approved as a supplier and its products could only be designated as approved products if they could meet certain quality standards and performance requirements.

24. Among other requirements, Target made clear that it required its approved suppliers to guarantee and warrant that the roof membranes they sold to Target would last at least 15-17 years without needing replacement.

25. Target also made clear that it considered a roof membrane to "need" replacement when the roof membrane had substantial or widespread cracking or degrading, including hairline cracks that had not yet breached through the entire membrane, because even hairline cracks in such membranes could lead to leaks and substantial damages.

26. Target also made clear that it was getting 15-17 years of service out of the roofing membranes on its current stores and that it would not approve a new supplier or new product that did not last and fully perform at least as long as its current roof membranes lasted and performed.

27. Seaman made several representations, promises, guarantees and warranties to convince Target to (a) designate Seaman as an approved supplier, (b) designate Seaman's

FiberTite 36 mil roofing membrane as an approved product for use on Target stores, (c) allow Seaman to participate in Target's future invitation-only bid events, and (d) purchase Seaman's FiberTite 36 mil roofing membrane for certain Target stores.

28. The representations, promises, guarantees and warranties made by Seaman included, but were not limited to, the following:

   a. Seaman's FiberTite 36 mil membrane performs better and lasts longer than the 45 mil and 60 mil membranes from other manufacturers;

   b. Seaman's FiberTite 36 mil membrane would last and perform longer than the membranes that Target was currently purchasing for its new stores and replacement jobs;

   c. Seaman's FiberTite 36 mil membrane would last and perform longer than the membranes Target had been using on its stores, which did not need replacement until they had been in service for between 15 to 17 years;

   d. Seaman's FiberTite 36 mil membranes would last longer than 15 to 17 years and would not need replacement in that timeframe;

   e. Seaman had 36 mil membranes that were still performing on roofs more than 20 years after installation and that this length of performance and service was typical for the FiberTite 36 mil and 45 mil membranes;

   f. Seaman's FiberTite 36 mil membrane would outlast the membrane products from its competitors that Target had used and was then having installed on the roofs of its stores;

   g. Seaman's FiberTite 36 mil membrane would not experience substantial or widespread cracking or degrading, or hairline cracks that had not yet breached through the entire membrane, for at least 15 years;

   h. Target could expect that Seaman's FiberTite 36 mil membranes would last 20 or more years before requiring replacement;

   i. Seaman's FiberTite 36 mil membrane would be defect free at the time it was sold and during its expected lifetime of 20 or more years;

   j. The above-described representations, promises, guarantees and warranties would be part of every sale of FiberTite that Seaman made to Target; and

5

    k.    Target could rely on Seaman's above-referenced representations, promises, guarantees and warranties if it purchased FiberTite products for use on its stores.

(collectively, Seaman's Warranties")

29.    Based on Seaman's Warranties, Target designated Seaman as an approved supplier and agreed to let Seaman participate in an invite-only bid event for Target's roof membrane business.

30.    Based on Seaman's Warranties, Target purchased Seaman's FiberTite 36 mil membrane for more than 160 individual Target stores.

31.    Seaman's Warranties formed the basis of the bargain between Target and Seaman in connection with Target's purchase of Seaman's FiberTite 36 mil membrane for more than 160 individual Target stores.

32.    Seaman intended that Target rely on Seaman's Warranties at the time the representations, promises, guarantees and warranties were made.

33.    Seaman intended that Target rely on Seaman's Warranties each time Target purchased Seaman's FiberTite 36 mil membrane for an individual Target store.

34.    Seaman expressly warranted that the goods it sold Target, including the FiberTite membranes, would conform to its affirmations and promises, including, without limitation, the promises regarding product performance and longevity included in Seaman's Warranties.

35.    Without limiting the foregoing, Seaman's representations, promises, guarantees and warranties were express and they explicitly extended to the future performance of each of the 36 mil FiberTite roofing membranes that Seaman's sold to Target.

36.    Seaman intended its representations, promises, guarantees and warranties to extend to the future performance of each of the 36 mil FiberTite roofing membranes it sold to Target.

6

37. At all times relevant to this action, Target relied on Seaman's Warranties, including that they would extend to the future performance of the 36 mil FiberTite roofing membrane.

38. Seaman advertised FiberTite as the "original" Elvaloy® Ketone Ethylene Ester ("KEE") membrane.

39. Seaman advertised FiberTite as the only known single-ply KEE sheet on the market that meets the ASTM standard D6754.

40. Seaman represented and continues to represent to the public in its advertising that "After 25 years of rooftop exposure, a 36 mil FiberTite roofing membrane retains: 80% of its original physical properties."

41. Seaman represented and continues to represent to the public in its advertising that "After 25 years of rooftop exposure, a 36 mil FiberTite roofing membrane retains: 60% of its original thickness over the fiber."

42. Seaman represented and continues to represent to the public in its advertising that "More than 30 years of performance demonstrates that FiberTite roofs simply do not fail."

43. In addition to its reliance on Seaman's Warranties, Target relied on these or similar statements in Seaman's advertising in deciding to purchase Seaman's FiberTite 36 mil membrane for more than 160 individual Target stores.

**C.  Seaman's Breaches of Warranty.**

44. Target owns a store located in South Orlando, Florida, (Store T0650).

45. Target purchased 36 mil FiberTite roofing membrane for Store T0650 in or about October 2006.

46. Target owns a store located in Palm Harbor, Florida, (Store T0652).

47. Target purchased 36 mil FiberTite roofing membrane for Store T0652 in or about January 2008.

48. Target owns a store located in Stuart, Florida, (Store T0816).

49. Target purchased 36 mil FiberTite roofing membrane for Store T0816 in or about October 2007.

50. Target owns a store located in Fort Meyers, Florida, (Store T0818).

51. Target purchased 36 mil FiberTite roofing membrane for Store T0818 in or about January 2007.

52. Target owns an additional store located in Fort Meyers, Florida, (Store T2369).

53. Target purchased 36 mil FiberTite roofing membrane for Store T2369 in or about December 2007.

54. Target owns a store located in Lake Mary, Florida, (Store T0845).

55. Target purchased 36 mil FiberTite roofing membrane for Store T0845 in or about January 2008.

56. Target owns a store located in Orange City, Florida (Store T0874).

57. Target purchased 36 mil FiberTite roofing membrane for Store T0874 in or about January 2006.

58. Target owns a store located in Casselberry, Florida, (Store T0898).

59. Target purchased 36 mil FiberTite roofing membrane for Store T0898 in or about January 2008.

60. Target owns a store located in Tampa, Florida, (Store T2289).

61. Target purchased 36 mil FiberTite roofing membrane for Store T2289 in or about March 2007.

62. Target owns a store located in Riverview, Florida (Store T2235).

63. Target purchased 36 mil FiberTite roofing membrane for Store T2235 in or about February 2007.

64. Target owns a store located in Panama City Beach, Florida (Store T0811).

65. Target purchased 36 mil FiberTite roofing membrane for Store T0811 in or about March 2008.

66. Target owns a store located in Richmond, Virginia, (Store T1018).

67. Target purchased 36 mil FiberTite roofing membrane for Store T1018 in or about April 2008.

68. Target owns a store located in Richmond, California, (Store T1507).

69. Target purchased 36 mil FiberTite roofing membrane for Store T1507 in or about January 2007.

70. Target owns a store located in Royersford, Pennsylvania (Store T2131).

71. Target purchased 36 mil FiberTite roofing membrane for Store T2131 in or about March 2006.

72. Target owns a store located in Somersworth, New Hampshire (Store T2182).

73. Target purchased 36 mil FiberTite roofing membrane for Store T2182 in or about March 2006.

74. Target owns a store located in Parker, Colorado (Store T2219).

75. Target purchased 36 mil FiberTite roofing membrane for Store T2219 in or about January 2007.

76. Target owns a store located in Quakertown, Pennsylvania (Store T2246).

77. Target purchased 36 mil FiberTite roofing membrane for Store T2246 in or about September 2006.

78. Target owns a store located in Pleasant Prairie, Wisconsin (Store T2251).

79. Target purchased 36 mil FiberTite roofing membrane for Store T2251 in or about April 2008.

80. Target owns a store located in Stoughton, Massachusetts (Store T2258).

81. Target purchased 36 mil FiberTite roofing membrane for Store T2258 in or about January 2008.

82. Target owns a store located in Omaha, Nebraska (Store T2326).

83. Target purchased 36 mil FiberTite roofing membrane for Store T2326 in or about February 2007.

84. Target owns a store located in Frisco, Texas (Store T2338).

85. Target purchased 36 mil FiberTite roofing membrane for Store T2338 in or about January 2009.

86. Target owns a store located in Lathrop, California, (Store T2347).

87. Target purchased 36 mil FiberTite roofing membrane for Store T2347 in or about February 2008.

88. Target owns a store located in Los Banos, California (Store T2359).

89. Target purchased 36 mil FiberTite roofing membrane for Store T2359 in or about January 2008.

90. Target owns a store located in Harker Heights, Texas (Store T2374).

91. Target purchased 36 mil FiberTite roofing membrane for Store T2374 in or about December 2007.

92. Target owns a store located in Atwater, California (Store T2386).

93. Target purchased 36 mil FiberTite roofing membrane for Store T2386 in or about January 2008.

94. Target owns a store located in Indianapolis, Indiana (Store T2391).

95. Target purchased 36 mil FiberTite roofing membrane for Store T2391 in or about September 2007.

96. Target owns a store located in Henderson, Nevada (Store T2404).

97. Target purchased 36 mil FiberTite roofing membrane for Store T2404 in or about February 2008.

98. Target owns a store located in San Antonio, Texas (Store T2426).

99. Target purchased 36 mil FiberTite roofing membrane for Store T2426 in or about January 2010.

100. Target owns a store located in Bryan, Texas, (Store T2428).

101. Target purchased 36 mil FiberTite roofing membrane for Store T2428 in or about February 2008.

102. Target owns a store located in Fort Collins, Colorado (Store T2403).

103. Target purchased 36 mil FiberTite roofing membrane for Store T2403 in or about December 2007.

104. Target owns a store located in Sheridan, Colorado (Store T2261).

105. Target purchased 36 mil FiberTite roofing membrane for Store T2261 in or about September 2007.

106. Target owns a store located in Edgewater Colorado (Store T2225).

107. Target purchased 36 mil FiberTite roofing membrane for Store T2225 in or about April 2015.

108. Target Stores T0650, T0652, T0811, T0816, T0818, T0845, T0874. T0898, T1018, T1507, T2131, T2182, T2219, T2235, T2246, T2251, T2258, T2289, T2326, T2347, T2359, T2369, T2374, T2386, T2391, T2404, T2426, T2428, T2403, T2261, and T2225 are collectively referred to herein as the "Affected Target Stores."

109. Seaman's Warranties were incorporated into and were a part of the sale of each of the FiberTite membranes purchased by Target for the individual Affected Target Stores.

110. Seaman's Warranties formed the basis of the bargain with respect to the sale of each of the FiberTite membranes purchased by Target for the individual Affected Target Stores.

111. Seaman breached Seaman's Warranties with respect the FiberTite membranes purchased by Target for each of the individual Affected Target Stores, because, among other things:

    a. Seaman's FiberTite 36 mil membranes purchased for the individual Affected Target Stores did not perform better or last longer than the 45 mil and 60 mil membranes from other manufacturers;

    b. Seaman's FiberTite 36 mil membranes purchased for the individual Affected Target Stores did not last and perform longer than the non-FiberTite membranes that Target was purchasing for its new stores and replacement jobs at the times Seaman's Warranties were made;

    c. Seaman's FiberTite 36 mil membranes purchased for the individual Affected Target Stores did not last and perform longer than the membranes Target had been using on its stores, which did not need replacement until they had been in service for between 15 to 17 years;

    d. Seaman's FiberTite 36 mil membranes purchased for the individual Affected Target Stores did not last longer than 15 to 17 years and each has required or will require replacement less than 15 years from the date of installation;

  e. Seaman's FiberTite 36 mil membranes purchased for the individual Affected Target Stores have not outlasted the membrane products from its competitors that Target previously used and was installing on the roofs of its stores prior to using FiberTite products;

  f. In less than 15 years, Seaman's FiberTite 36 mil membranes purchased for the individual Affected Target Stores is experiencing substantial and widespread cracking and degrading, including hairline cracks that have not yet breached through the entire membrane;

  g. Seaman's FiberTite 36 mil membranes purchased for the individual Affected Target Stores were not defect free during its expected lifetime of 20 or more years;

112. Seaman has breached Seaman's Warranties with respect to each of the individual Affected Target Stores.

113. Seaman continues to breach one or more of Seaman's Warranties each day with respect to each of the individual Affected Target Stores on which the FiberTite membrane is installed.

  **D.** **Seaman's Statements and Conduct Prevented Discovery of its Breaches Of Warranty and Other Wrongful Conduct.**

114. As described more fully in this pleading, Seaman made affirmative statements regarding, among other things, the longevity and performance of the products it sold to Target that Seaman either knew to be false or made in reckless disregard of their truth or falsity.

115. The affirmative statements that Seaman made regarding, among other things, the longevity and performance of the products were false.

116. Target did not know that the affirmative statements made by Seaman were false and relied on them.

117. After Target observed the first instances of cracking of the FiberTite 36 mil membranes, Seaman's representatives inspected the subject membranes and misrepresented to

Target that the cracking was not the result of a defect in the FiberTite 36 mil membranes, but was instead caused by large hail striking the membrane.

118. On information and belief, Seaman made these misrepresentations with the intent that Target rely on them, to prevent Target from discovering the true cause of the cracking the FiberTite 36 mil membranes, and to prevent Target from learning that it had one or more claims for breach of warranty against Seaman.

119. Target did not know that the affirmative statements made by Seaman were false and relied on them to its detriment, including without limitation, in not immediately conducting further investigation into, among other things, the cause of the cracking and by not immediately commencing a lawsuit for Seaman's breach of warranty.

## COUNT I
### *(Breach of Express Warranties)*

120. Target hereby incorporates by reference each of the foregoing paragraphs and realleges them as though fully set forth herein.

121. Seaman made one or more affirmations of fact or promises, including without limitation, Seaman's Warranties.

122. Seaman made these affirmations of fact or promises in connection with the sale of each of the FiberTite 36 mil membranes sold to Target for each of the individual Affected Target Stores.

123. Seaman's affirmations of fact or promises each relate to the goods sold by Seaman to Target and each became part of the basis of the bargain.

124. Seaman's affirmations of fact or promises created one or more express warranties that the goods shall conform to the affirmations or promises.

125. Seaman provided Target with descriptions of the FiberTite membranes and associated products prior to and in connection with its sale of such products to Target and those descriptions were made part of the basis of the bargain with Target.

126. Seaman's above-described affirmations of fact, promises and descriptions were not merely of the value of the goods, its opinion of the goods or the commendation of the goods, but were instead express warranties provided by Seaman to induce Target to buy Seaman's products.

127. Target relied on Seaman's above-described affirmations of fact, promises and descriptions, including Seaman's Warranties, when making its decision to purchase Seaman's products, when agreeing to allow Seaman to participate in one or more bid events, when approving Seaman as supplier, when agreeing to purchase Seaman's products, and when purchasing Seaman's products.

128. Seaman's products on the Affected Target Stores failed to perform as warranted by Seaman.

129. Seaman's products on the Affected Target Stores are defective.

130. To the extent notice was required, Target provided Seaman with reasonable notice of the defects in Seaman's products on the Affected Target Stores and of the products' failure to perform as warranted.

131. Seaman's breach of its express warranties made with respect to Seaman's products on the Affected Target Stores has caused and continues to cause Target substantial injury and damages.

132. Seaman's continuing breach of Seaman's Warranties are continuing to cause Target substantial injury and damages.

133. Without limiting the foregoing, Target has been injured by the failure of Seaman's products to perform as warranted on the Affected Target Stores in an amount that far exceeds $75,000, exclusive of interest and costs.

## COUNT II
(*Fraud*)

134. Target hereby incorporates by reference each of the foregoing paragraphs and realleges them as though fully set forth herein.

135. As described more fully above, Seaman made the above-described representations of fact regarding the FiberTite 36 mil membranes and associated products purchased for the Affected Target Stores.

136. Each of these representations was material to Target's decision to purchase Seaman's products, allow Seaman to participate in one or more bid events, approve Seaman as supplier, agree to purchase Seaman's products, and purchase Seaman's products.

137. Seaman made these representations falsely, with knowledge of their falsity or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred.

138. Seaman made these representations with the intent of misleading Target into relying upon the representations.

139. Seaman made these representations with the intent of inducing Target into allowing Seaman to participate in one or more bid events, approving Seaman as supplier, agreeing to purchase Seaman's products, and/or purchasing Seaman's products.

140. Target justifiably relied upon the representations.

141. Target would not have agreed to allow Seaman to participate in one or more bid events, approved Seaman as supplier, agreed to purchase Seaman's products, and/or purchased

16

Seaman's products if it had known the truth regarding Seaman's false statements and representations.

142. Seaman's conduct caused and continues to cause Target substantial injury and damages.

143. Without limiting the foregoing, Target has been injured by its justifiable reliance on the representations made by Seaman in an amount that far exceeds $75,000, exclusive of interest and costs.

## COUNT III
### (*Deceptive Trade Practices Act*
### *Orc §§ 4165.01, et seq.*)

144. Target hereby incorporates by reference each of the foregoing paragraphs and realleges them as though fully set forth herein.

145. As described above, Seaman represented and advertised that the goods it was selling to Target for the individual Affected Target Stores had characteristics, ingredients, uses, and benefits that the goods did not actually have.

146. Seaman's conduct caused and continues to cause Target substantial injury and damages.

147. Without limiting the foregoing, Target has been and will be forced to incur costs to repair and replace the FiberTite membrane at great expense or else risk serious reputational detriment to Target's business.

148. Without limiting the foregoing, Target has been injured by Seaman's deceptive trade practices in an amount that far exceeds $75,000, exclusive of interest and costs.

## COUNT IV
### (*Revocation of Acceptance*)

149. Target hereby incorporates by reference paragraphs 1-119 above and re-alleges them as though fully set forth herein.

150. The goods sold by Seaman do not conform to the representations, promises, guarantees and warranties made by Seaman and/or the descriptions provided by Seaman.

151. Target accepted the goods sold by Seaman without discovery that the goods did not conform to the representations, promises, guarantees and warranties made by Seaman and/or the descriptions provided by Seaman.

152. Target's acceptance of the goods was reasonably induced by the difficulty of discovering before acceptance that the goods sold by Seaman did not conform to the representations, promises, guarantees and warranties made by Seaman and/or the descriptions provided by Seaman.

153. Without limiting the foregoing, Target had no reasonable way of determining at the time it accepted the goods whether the goods conformed to the representations, promises, guarantees and warranties made by Seaman to Target.

154. Target relied on Seaman's assurances that Seaman's representations, promises, guarantees and warranties were true, that it could rely on such representations, promises, guarantees and warranties, and that the products that were the subject of such representations, promises, guarantees and warranties fully conformed to the representations, promises, guarantees and warranties.

155. The non-conformities in the goods sold by Seaman to Target substantially impairs the value of the goods to Target.

156. There has been no substantial change in condition of the products sold by Seaman to Target for the Affected Target Stores except changes caused by or resulting from the non-conformities in the goods sold by Seaman.

157. Target gave timely and reasonable notice to Seaman of the non-conformities in the goods sold by Seaman to Target for the Affected Target Stores.

158. Target has timely and properly revoked its acceptance of the non-conforming goods sold by Seaman to Target for the Affected Target Stores.

159. Seaman refuses to take back the non-conforming goods or to refund Target's purchase price for the non-conforming goods.

160. Target has been injured by Seaman's conduct and is entitled to the remedies provided in the Uniform Commercial Code as adopted in Ohio, including, without limitation, a refund of all amounts paid to Seaman for the non-conforming goods purchased for the Affected Target Stores.

161. Alternatively, Target is entitled to receive fully conforming goods from Seaman to replace each of the non-conforming goods purchased for the Affected Target Stores.

WHEREFORE, Target Corporation respectfully requests that the Court enter a judgment against Seaman Corporation and in favor of Target Corporation as follows:

1. Awarding Target monetary damages for its economic losses, including, consequential and incidental damages, in amounts to be determined at trial;

2. Alternatively, requiring Seaman to refund of all amounts paid by Target for the non-conforming goods purchased for the Affected Target Stores;

3. Alternatively, requiring Seaman to provide Target with fully conforming goods to replace each of the non-conforming goods purchased for the Affected Target Stores;

4. Awarding Target its costs and attorneys' fees, as and if permitted by law; and

5. Granting Target such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated:  December 3, 2018

>Respectfully submitted,
>
>s/ *Tracey S. McGurk*
>TRACEY S. McGURK (0069631)
>JOSHUA T. MORROW (0084060)
>MANSOUR GAVIN LPA
>North Point Tower
>1001 Lakeside Avenue, Ste. 1400
>Cleveland, OH 44114
>Phone:   216.523.1500
>Fax:     216.523.1705
>E-Mail: tmcgurk@mggmlpa.com
>***Local Counsel for Plaintiff***
>
>s/ *Matthew R. McBride*
>Matthew R. McBride
>Michael E. Obermueller
>WINTHROP & WEINSTINE, P.A.
>225 South Sixth Street, Suite 3500
>Minneapolis, MN 55402-4629
>Telephone:  (612) 604-6400
>Facsimile:  (612) 604-6800
>E-Mail: mmbride@winthrop.com
>E-Mail:  mobermueller@winthrop.com
>***Counsel for Plaintiffs (pro hac vice is
>          forthcoming)***

16332397v4